# Richmond

## CITY OF NORFOLK V. EARL ALLEN BENNETT.

March 8, 1965.

Record No. 5934.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

*Robert D. Holland, Assistant City Attorney (Leonard H. Davis, City Attorney,* on brief), for the appellant.

*Howard I. Legum (Fine, Fine, Legum, Schwan & Fine,* on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

This is an appeal from a final order of the Industrial Commission denying the application of the city of Norfolk to cancel and terminate compensation awarded to Earl Allen Bennett.

Bennett, a police officer of the city, was, on the 7th day of November, 1962, assigned to motorcycle duty on the 3:00 p. m. to 11:00 p. m. shift. He requested and was granted permission, by his superior officer, to go off duty at 10:00 p. m. on that date. He was on his way to headquarters to "check off" when he was hailed by a fellow officer, with whom he spent some time discussing police matters. Noting that time had "just slipped away," he told the other officer "I'm supposed to be off" and again started toward head-quarters. His motorcycle was, at 10:54 p. m., involved in a collision with a fire engine owned by the city and operated by Clyde William Griffin, a city fireman. The engine was responding to an alarm of a fire at the Golden Triangle Hotel in Norfolk.

Bennett was seriously injured as a result of the collision. The city accepted the case as compensable and on November 29, 1962, entered into an agreement with Bennett providing for the payment of his full salary during his incapacity. The agreement was submitted to and approved by the Commission.

Bennett returned to duty on April 10, 1963, and his disability compensation was then terminated. However, approximately two months later, he again became incapacitated from his injuries and

on July 2, 1963, entered into a supplemental agreement with the city providing for further compensation. The new agreement was approved by the Commission on July 10, 1963, and the award entered pursuant thereto was outstanding at the time the city filed the application which is the basis of this controversy.

In its application, the city prayed that the award of compensation to Bennett be cancelled and terminated and that he be directed to "pay back to the City of Norfolk all sums that it has expended on his behalf." This relief was sought, the application stated, because Bennett had instituted a civil action against Griffin, the operator of the fire vehicle, in the Court of Law and Chancery of the City of Norfolk, and in that action had filed an affidavit stating that he (Bennett) "was not on duty at the time and place of the accident in controversy, nor did it arise out of or in the course of the plaintiff's employment."

On September 17, 1963, a hearing was conducted on the city's application by Deputy Commissioner Harwood. In a written opinion, he ruled that there was insufficient evidence of fraud, mistake or duress to justify vacating the awards previously entered. At the city's request, the full Commission reviewed the case and, on March 26, 1964, affirmed the ruling of the Deputy Commissioner.

In the hearing before the Deputy Commissioner, Bennett testified as to his activities immediately preceding the accident. He stated that he executed the affidavit which was filed in his action against Griffin, that he had done so on the advice of counsel, and that he was told that there was "a question of law . . . as to whether [he was] in the employ of the City" at the time of the accident.

The record shows that Louis B. Fine was counsel for Bennett in the action brought against Griffin. It also discloses that it was Fine who filed the affidavit in question. The affidavit was filed in response to a special plea filed by Griffin that Bennett's exclusive remedy was under the Workmen's Compensation Act and a plea of estoppel based upon Bennett's representations, in securing the awards from the Commission, that his injuries arose out of and in the course of his employment.

The Court of Law and Chancery of the City of Norfolk, on October 22, 1963, sustained Griffin's pleas and entered summary judgment in his favor. Bennett sought but was refused a writ of error to that judgment, as disclosed by our records, of which we take judicial notice.

■ The city's sole contention is that the Commission erred in

holding that there was not sufficient evidence of fraud or mistake to justify vacating the awards previously entered.

Bennett contends that the Commission's decision is binding upon us by virtue of Code, § 65-94 which provides that an award of the Commission "shall be conclusive and binding as to all questions of fact."

There being no conflict in the evidence, the question of the sufficiency thereof is one of law. *Scott* v. *Willis*, 150 Va. 260, 262, 142 S. E. 400. The decision of the Commission is not, therefore, such as is conclusive and binding upon us and we must inquire to determine if the correct legal conclusion has been reached.

The power of the Commission to hear and determine an application alleging that a former award was obtained by fraud or mistake was recognized in *Harris* v. *Diamond Const. Co.*, 184 Va. 711, 721, 36 S. E. 2d 573. But where charges of fraud or mistake are involved before the Commission, the burden of proof and the character of evidence required are governed by the same rules that apply to a court of equity. *Ashby* v. *Red Jacket Coal Corp.*, 185 Va. 202, 207, 38 S. E. 2d 436.

"The charge of fraud is one easily made, and the burden is upon the party alleging it to establish its existence, not by doubtful and inconclusive evidence, but clearly and conclusively. Fraud cannot be presumed. It must be proved by clear and satisfactory evidence. It is true that fraud need not be proved by positive and direct evidence, but may be established by facts and circumstances sufficient to support the conclusion of fraud. But whether it be shown by direct and positive evidence, or established by circumstances, the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge . . . ." *Redwood* v. *Rogers*, 105 Va. 155, 158, 53 S. E. 6.

The burden of proof is likewise on the party alleging mistake to prove its existence. *The Pulaski Iron Co.* v. *Palmer and Wife*, 89 Va. 384, 386, 16 S. E. 275. "The evidence of the mistake 'must be clear and satisfactory, leaving but little, if any, doubt of the mistake.' " *French* v. *Chapman*, 88 Va. 317, 322, 13 S. E. 479.

With these principles in mind, we turn to the record to see if the city has borne the burden imposed upon it in establishing its case. That burden required the city to show that Bennett was not, in fact, on duty at the time of the accident and that he fraudulently withheld that information from the city.

The city relies on the testimony of Bennett, given in the hearing

before the Deputy Commissioner. There he stated, speaking of his status at the time of the accident, that "far as I'm concerned, I was off at ten P. M. . . . the Sergeant gave me off at ten o'clock . . . I was off. I couldn't have been on." The city then argues that because Bennett failed to disclose that he was off duty at the time of the accident, he is subject to the rule that "fraud is the concealment of the truth, just as much as it is the utterance of a falsehood." *Frazier* v. *Brewer*, 52 W. Va. 306, 43 S. E. 110, 111. Alternatively, the city argues that because it had no knowledge that Bennett was not on duty, "the agreement to pay compensation resulted from an honest mistake on the part of" the city.

But Bennett could not be found guilty of fraudulently concealing the information that he was not on duty at the time of the accident if he was, in fact, then on duty. And if he was then on duty, the city could not have labored under a mistake with respect to that fact when it agreed to the payment of compensation. This holds true regardless of what Bennett may have later said, or what was then his motive for saying it, in the hearing before the Deputy Commissioner, where he was faced with the dilemma of trying to protect his pending action against Griffin and, at the same time, to save his compensation awards.

The crucial question then becomes, was Bennett on duty when the accident occurred? We are of opinion that the evidence clearly answers that question in the affirmative.

At the time of the accident, Bennett was wearing a police uniform and riding a police motorcycle with its radio in operation. Although he had been granted permission to leave work early, he had not availed himself thereof and was still within the hours of his normal tour of duty. He was en route to his headquarters to perform an official function, that is, to "check off" by turning in the summonses he had issued and preparing a report of his activities for the day, matters essential to his being relieved of duty.

All of this shows that Bennett was on duty at the time of the accident and that his injuries arose out of and in the course of his employment. This being so, there was no fraud or mistake present at the time the awards were made and, as the Commission held, they became binding upon the parties. *Wise Coal Co.* v. *Roberts*, 157 Va. 782, 788, 161 S. E. 911.

But what of Bennett's affidavit that he was not on duty at the time of the accident and that his injuries did not arise out of and in the course of his employment? And what effect is to be

given the obvious implication which arises from the execution and filing of that affidavit?

These matters were directed, not to the Commission in an effort by Bennett to obtain the awards, but to the Court of Law and Chancery in an effort to induce it to accept a case over which it had no jurisdiction. Whatever impropriety there may have been in Bennett's actions, it was practiced upon the court and not upon the Commission and can have no effect upon the awards.

Moreover, it will be remembered that Bennett explained that he executed the affidavit on the advice of his counsel that there was a question of law as to whether he was in the employ of the city at the time the accident occurred.

This explanation may suffice to lessen the impact of Bennett's actions with respect to his law action against Griffin, but it serves little in the way of providing an understanding as to why such maneuvers were ever undertaken by his counsel.

With a perfectly fair and valid compensation award in Bennett's hands, adjudicating facts directly contrary to those set forth in the affidavit, this counsel undertook to file and prosecute the baseless law action against Griffin in a manner which might well have had more disastrous results for the client than have already befallen him.

By advising and permitting Bennett to swear to the affidavit, his counsel placed him in a position of peril where he faced, among other things, the loss of both the law action and the compensation awards.

And now, Bennett's counsel asks in his brief that we not sustain the position of the city because the effect would be to deprive Bennett of any remedy, in view of the fact that the law action against Griffin has already been lost. This argument offers little reason for not sustaining the position of the city, and if Bennett should be left without a remedy, the blame therefor would hardly lie at our door.

We prefer to view the decision of the Commission, as we must, upon its own merits, and not with any idea of affirming it to save face for anyone or, on the other hand, of reversing it merely to inflict a penalty upon someone for his misguided actions. Upon its merits, the decision is correct and it will be

*Affirmed.*