COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Bray and Senior Judge Hodges
Argued at Alexandria, Virginia


JONES CHEMICAL, INC.
AND
ST. PAUL FIRE & MARINE INSURANCE COMPANY
                                    MEMORANDUM OPINION[*] BY
v.   Record No.  1248-96-4         JUDGE WILLIAM H. HODGES
                                         APRIL 1, 1997
JACK DEMPSY PARSON, SR.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION
              R. Ferrell Newman (Thompson, Smithers,
              Newman & Wade, on brief), for appellants.

              Michael W. Heaviside (Lawrence J. Pascal;
              Ashcraft & Gerel, on brief), for appellee.


     Jones Chemical, Inc. and its insurer (hereinafter
collectively referred to as "employer") contend that the Workers'
Compensation Commission ("commission") erred in finding that Jack
Dempsey Parson, Sr. ("claimant") cured his unjustified refusal of
selective employment offered by employer.  We find as a matter of
law that no credible evidence supports the commission's finding
that claimant's job search efforts were sufficient to cure his
unjustified refusal of selective employment.  Accordingly, we
reverse the commission's decision.

     On June 2, 1995, claimant sustained compensable injuries to
his left ankle, hip, and back.  Pursuant to an agreement of the
parties, the commission entered an award on July 14, 1995 for

─────────────
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

temporary total disability benefits beginning June 10, 1995. On August 21, 1995, employer filed a change in condition application, alleging that on August 8, 1995, claimant unjustifiably refused selective employment offered by employer.

On August 3, 1995, Dr. Andre Eglevsky, Parson's treating physician, opined that claimant could perform a light-duty position proposed by employer, which required claimant to handle and clean one-pound valves and allowed him to sit or stand. Dr. Eglevsky noted that claimant vehemently objected to returning to work of any kind. On August 4, 1995, Dr. Eglevsky approved a job description submitted to him by employer for claimant to work as a valve rebuilder. The position required that claimant alternatively sit, stand, and walk during an eight-hour period, frequently squat, frequently use his hands to grasp and manipulate items, and lift no more than twenty-five pounds. The position involved no bending, crawling or climbing.

On August 7, 1995, employer offered claimant the valve rebuilder job approved by Dr. Eglevsky. Claimant called employer the next morning, and refused to report to work because he was in too much pain. Claimant reported for work the next day, but employer sent him home because claimant's supervisor was not available. Claimant returned to work on August 10, 1995. Before starting work, claimant told his supervisor that he was in pain. Claimant left employer's premises after working approximately two hours, claiming that he could not continue due to increasing

pain. Claimant returned to Dr. Eglevsky that afternoon. Dr. Eglevsky noted a normal examination, and he reported that no objective evidence substantiated claimant's complaints of discomfort. Dr. Eglevsky opined that claimant's "subjective complaints of pain should not interfere with his ability to return to light work that was prescribed."

Based upon this record, the commission ruled that claimant had unjustifiably refused light-duty work offered by employer. The commission found that the evidence showed that claimant had magnified his symptoms, and that he had not made a bona fide attempt to perform the light-duty job. Claimant did not appeal that finding. Therefore, it is binding and conclusive upon us on appeal. The commission suspended claimant's outstanding award as of August 10, 1995. However, the commission reinstated claimant's award of disability benefits beginning August 25, 1995, finding that he cured his unjustified refusal of selective employment by adequately marketing his residual work capacity after that date.

The standard of review applicable to this case is as follows:

> This appeal does not present a case of
> conflicting evidence or a dispute concerning
> the commission's findings of fact. When the
> issue is the sufficiency of the evidence and
> there is no conflict in the evidence, the
> issue is purely a question of law. This
> Court is not bound by the legal
> determinations made by the commission. "[W]e
> must inquire to determine if the correct
> legal conclusion has been reached."

Cibula v. Allied Fibers & Plastics, 14 Va. App. 319, 324, 416 S.E.2d 708, 711 (1992) (quoting City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965) (citations omitted)), aff'd, 245 Va. 337, 428 S.E.2d 905 (1993).

The undisputed evidence showed that claimant, who was forty-two years old as of the hearing date, had an eleventh grade education. He had served in the military. In addition to his eight years of work for employer, he had worked as a cook. On August 25, 1995, claimant registered with the Virginia Employment Commission ("VEC"). He also visited the VEC on October 17, 1995.

Claimant submitted a list of forty-one job contacts he made between August 26, 1995 and December 20, 1995, the hearing date. Out of the five job contacts claimant made in August, two were for laborer positions and one was for a warehouse position. The job duties of these three positions, from all indications, would have entailed duties far in excess of claimant's residual work capacity.

During September 1995, claimant made sixteen contacts with potential employers. Two of these contacts were for laborer positions and four contacts were for stock clerk positions. Thus, six out of the sixteen contacts claimant made in September entailed job duties which would have apparently exceeded his residual work capacity. Three of the businesses claimant contacted twice during September, and two of the businesses he had previously contacted in August.

During October 1995, claimant made only four contacts with prospective employers. Two of the job contacts were for laborer positions and the other two were for stock clerk positions, all of which, from all appearances, would have entailed job duties exceeding claimant's residual work capacity. All four of the businesses claimant contacted in October were ones that he had previously contacted in August or September.

During November 1995, claimant again made only four contacts with prospective employers. One of the job contacts was for a laborer position, and claimant had previously contacted three of the businesses in September. Claimant made no job contacts after November 8, 1995 until December 19, 1995, the day before the hearing.

On December 19, 1995, claimant made four contacts with prospective employers. Two of these contacts were for stock clerk jobs, and claimant had previously contacted two of the businesses in September. On December 20, 1995, the day of the hearing, claimant allegedly made eight job contacts and contacted a rehabilitation counselor between the opening of business and 2:00 p.m. One of the jobs was for a laborer position, and claimant had previously contacted at least one of the businesses. Finally, we note that the list appears to contain the handwriting of several different individuals.

Based upon all of these facts, we find that claimant's list of alleged job contacts is inherently incredible. Absent the

list, the evidence is not sufficient to prove that claimant made a good faith effort to market his residual work capacity.

"[I]f disability benefits are suspended because an employee unjustifiably refuses selective employment offered by the employer, the employee, nevertheless, will be entitled to a resumption of disability benefits once he has procured comparable employment suitable for his disability or has made a good faith effort to obtain suitable employment." Virginia Wayside Furniture, Inc. v. Burnette, 17 Va. App. 74, 79, 435 S.E.2d 156, 159 (1993).

"What constitutes a reasonable marketing effort depends upon the facts and circumstances of each case." The Greif Companies v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993). This Court has discussed factors which the commission should consider in deciding whether a claimant has made reasonable good faith efforts to market his remaining capacity:

> (1) the nature and extent of employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting employee's capacity to find suitable employment.

National Linen Serv. v. McGuinn, 8 Va. App. 267, 272, 380 S.E.2d 31, 34 (1989) (footnotes omitted).

Once claimant unjustifiably refused the light-duty job offered to him by employer, his wage loss was attributable to his

refusal and not to his injury.  This fact must be taken into account in evaluating the claimant's marketing efforts.  In light of the lack of credible evidence showing claimant's marketing efforts, claimant's age, education, and previous work experience, Dr. Eglevsky's unequivocal opinion that claimant could perform light work, and the lack of any objective evidence of a disabling condition, we find as a matter of law that claimant's evidence did not sustain his burden of proving that he made a good faith marketing effort sufficient to cure his unjustified refusal of light-duty work offered by employer.

For these reasons, we reverse the commission's decision.

<u>Reversed.</u>