COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


CURTIS BOIS
                                          OPINION BY
v.   Record No. 0839-02-4      CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        NOVEMBER 19, 2002
HUNTINGTON BLIZZARD AND
 UNINSURED EMPLOYER'S FUND


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Andrew S. Kasmer (Chasen & Boscolo,
            Chartered, on brief), for appellant.

            James Webb Jones, Assistant Attorney General
            (Jerry W. Kilgore, Attorney General; John J.
            Beall, Jr., Senior Assistant Attorney
            General, on brief), for appellee Uninsured
            Employer's Fund.

            No brief or argument for appellee Huntington
            Blizzard.


     Curtis Bois (claimant), contends the Workers' Compensation

Commission (commission) erred in finding that the Huntington

Blizzard ice hockey team (employer) did not have more than three

employees regularly in service within the Commonwealth of

Virginia as required by Code § 65.2-101 and was, therefore, not

subject to the Workers' Compensation Act (Act).  For the reasons

that follow, we affirm the commission's decision.

                          I.  FACTS

     We view the evidence in the light most favorable to the

employer, who prevailed below.  See Westmoreland Coal v.

Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999).  The commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989); Code § 65.2-706.

The evidence established that employer's team offices and home ice rink were located in Huntington, West Virginia.  Employer maintained no office in Virginia, and no employees lived in Virginia.  In October, 1999, claimant signed his employment contract at the team's offices in West Virginia.  Pursuant to the terms of the contract, employer paid claimant's salary, rent for his apartment in West Virginia and utilities.

The 1999 - 2000 regular hockey season began in October and ended in early April with three playoff games scheduled later in April.  There were seventy-one regular season games played over the course of one hundred eighty-three days.  Of those seventy-one regular season games, fourteen games were against Virginia teams and nine of those fourteen games were played at locations in Virginia.  The other games were played in Ohio, New Jersey, West Virginia, Illinois, Florida, Arkansas, and North Carolina.  All three playoff games were played in Virginia.  Employer brought approximately 23 employees to Virginia for each game played.  The team typically arrived at least one day before the game and left immediately after the regular season games.  During the playoffs, the team left the day after the game.

-

On April 12, 2000, claimant injured his left leg during a playoff game against the Hampton Roads Admirals in Virginia. He tore his medial collateral ligament and had surgery in May 2000. He completed the appropriate rehabilitation and played for another hockey team during the 2000 - 2001 season. Claimant's former coach, Roy Edwards, testified that the Huntington Blizzard's team is dormant and that the franchise has no daily operations. He also testified,

> [w]e paid everything for [claimant]. We paid for his surgery, we paid for his rehab, we paid for his flight to come back and be checked up [sic], we paid his - - we paid a portion of his salary, . . . up until he was cleared to play again. Financially, we looked after everything for him.

Employer never appeared at the hearing or submitted on brief at any stage of the proceedings. No evidence showed employer maintained workers' compensation insurance in the Commonwealth, thus the Uninsured Employer's Fund was a party to the proceeding.

The deputy commissioner found Virginia had no jurisdiction to consider the claim because "[a]lthough the team made scheduled trips to Virginia to play teams located in this state, it is not found that these trips constitute the regular service contemplated by §65.2-101." Thus, the deputy commissioner denied claimant's request for temporary total disability benefits for the period of April 12 to August 23, 2000 and unspecified permanent partial disability benefits.

-

The commission affirmed the deputy commissioner's decision and found:

> The claimant was not, and apparently never was, a resident of the Commonwealth of Virginia. His contract was executed in West Virginia. The employer was a company based exclusively in West Virginia that maintained no employees or facilities of any kind within the bounds of the Commonwealth. The only contacts between the employer, the claimant and the Commonwealth of Virginia, were a few isolated bus trips by the employer's team from West Virginia to three locations in Virginia during the 1999-2000 hockey season. For the remainder of the year, the employer and its team operated exclusively outside the Commonwealth of Virginia, playing most of its games in West Virginia, and the seven or eight other states where games were scheduled.

> We find that these limited contacts by the employer and its employees do not rise to the level of being "regularly in service . . . within this Commonwealth," as contemplated by the Act. Therefore, jurisdiction is lacking.

> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;

> While it is true that the accident occurred in Virginia, we fail to see . . . why Virginia employer's [sic] and insurers should be responsible - through the UEF - for the West Virginia employer's unfortunate failure to insure its liability to a resident of that state. The claimant and employer's activities in this state are simply too tenuous to rise to the level of regularity contemplated by the Act.

Claimant appealed that decision.

-

II.

Claimant contends that the commission erred in finding his injury was not covered by the Act. The precise issue to be determined in the instant case is whether the term "regularly in service . . . within this Commonwealth" applies only to the number of employees required for coverage under the Act or whether it also applies to the amount of contact necessary to trigger coverage. We agree with the commission that "regularly in service . . . within this Commonwealth" applies both to the number of employees required and the character of the business.

Code § 65.2-101 provides in pertinent part, that "'[e]mployee' means . . . [e]very person, including aliens and minors, in the service of another under any contract of hire or apprenticeship, written or implied, whether lawfully or unlawfully employed." It further provides, however, that "'[e]mployee' shall not mean . . . [e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Code § 65.2-101. Under this statute "once an employee proves that his or her injury occurred while employed in Virginia, an employer has the burden of producing sufficient evidence upon which the commission can find that the employer employed less than three employees regularly in service in Virginia." Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 2, 427 S.E.2d 428, 429 (1993), aff'd per curiam, 247

-

Va. 165, 440 S.E.2d 613 (1994). "Whether a person is an 'employee' and whether an employer has three or more employees 'regularly in service' are pivotal determinations in deciding if an employer is subject to the Act." Cotman v. Green, 4 Va. App. 256, 258, 356 S.E.2d 447, 448 (1987).

"The commission's construction of the Act is entitled to great weight on appeal." Cross v. Newport News Shipbuilding and Dry Dock Co., 21 Va. App. 530, 533, 465 S.E.2d 598, 599 (1996) (citing City of Waynesboro v. Harter, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985)). "While we generally give great weight and deference, on appeal, to the commission's construction of the Workers' Compensation Act, 'we are not bound by the commission's legal analysis in this or prior cases.'" Peacock v. Browning Ferris, Inc., 38 Va. App. 241, 248, 563 S.E.2d 368, 372 (2002) (quoting U.S. Air, Inc. v. Joyce, 27 Va. App. 184, 189 n.1, 497 S.E.2d 904, 906 n.1 (1998)).

In the instant case and several others, the commission has interpreted the term "regularly in service . . . within the Commonwealth" to apply not only to the number of employees engaged in performing the employer's established mode of work, but also, to require that the character of the business' "contacts and activities" within the Commonwealth be more than "irregular or merely occasional" to allow jurisdiction over the

-

claim.[1]  See Johnson v. M.S. Carriers, VWC File No. 170-96-38 (March 24, 1998), aff'd, Johnson v. M.S. Carriers, Record No. 0907-98-3 (Va. Ct. App. January 12, 1999); Whitley v. Cardinal Freight Carriers, Inc., VWC File No. 166-03-27 (November 9, 1994).  For example, in Johnson, claimant was an over-the-road truck driver who was dispatched from employer's headquarters in Tennessee.  Employer maintained two drop yards in Virginia, and claimant used the yards approximately two times per month.  On these facts the commission found that "regularly in service implies more than occasional pick-ups and drop-offs or merely driving through Virginia."  We agree with the commission's analysis.  The statutory language does not limit "regularly in service" only to the number of workers involved but it also uses that term to modify the phrase "within this Commonwealth."  Thus, the plain statutory requirement of at least three employees working with some degree of regularity within the Commonwealth is the triggering mechanism.

Claimant's reliance on our holding in Cotman to define "regularly in service" is misplaced.  In Cotman, we stated,

---

[1] We note that most of the cases analyzing Code § 65.2-101 have discussed the term "regularly in service" in relation to the number of employees necessary for coverage because that was the factual basis for disputing coverage.  See Smith v. Hylton, 14 Va. App. 354, 416 S.E.2d 712 (1992); Cotman, 4 Va. App. 256, 356 S.E.2d 447; Pineda v. Brothers, VWC File No. 186-95-81 (January 11, 1999); Bills v. Hi-Tech Polishing, VWC File No. 170-96-39 (August 25, 1995); Cannady v. McRae Co., 57 O.I.C. 74 (1977); Carnes v. Owen, 40 O.I.C. 74 (1968); and A. Larsen, The Law of Workmen's Compensation § 74.02.

-

"[I]n determining whether an employer has three or more employees regularly in service, the focus shifts to the character of the business and away from the character of the employment relationship."  Cotman, 4 Va. App. at 259, 356 S.E.2d at 448.  In Cotman, the business as well as the employees, whether they were full time, part time or temporary, were located within the Commonwealth.  The employer argued the temporary and part-time employees were not "regularly in service" because of the nature of part-time and temporary work and, therefore, were not covered by the Act.  The facts in Cotman did not require us to address the regularity of the employer's contacts within the state.

Additionally, we note that Craddock implicitly discussed the issue of the necessity for certain "minimum contacts" to establish jurisdiction under the Act.  In Craddock, we held that credible evidence supported the commission's exercise of jurisdiction because the evidence established the sufficient number of employees and the requisite minimum contacts.  16 Va. App. at 4, 427 S.E.2d at 431.  Unlike the instant case, the employees were hired in Virginia and the totality of their work for employer was completed in Virginia.

In the instant case, it is uncontested that employer had more than three full-time employees.  However, the character of employer's business within the Commonwealth was limited to twelve to fifteen days during the season and was not regular or

-

ongoing.  Thus, the character of this business was such that its contacts with Virginia were occasional and irregular. Therefore, credible evidence supports the commission's finding that the contacts were insufficient to meet the "regularly in service . . . within this Commonwealth" requirement of Code § 65.2-101.

<u>Affirmed.</u>