COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Alexandria, Virginia


MARK FIVE CONSTRUCTION COMPANY, INC.
                                                         OPINION BY
v.        Record No. 0865-03-4              JUDGE JAMES W. BENTON, JR.
                                                         DECEMBER 30, 2003
DANIEL GONZALEZ


FROM THE  VIRGINIA WORKERS' COMPENSATION COMMISSION

    Daniel E. Lynch (John T. Cornett, Jr.; Williams & Lynch, P.C., on
    briefs), for appellant.

    James E. Swiger (Swiger & Cay, on brief), for appellee.


The sole issue raised by this appeal is whether the Workers' Compensation Commission

erred in finding that Mark Five Construction Company, Inc. had three or more employees

regularly in service in Virginia.  We hold that the commission did not err, and we affirm the

award.

I.

Daniel Gonzalez suffered an injury by accident while working on a residential

reconstruction project in Oakton, Virginia.  At the time of his injury, he was an employee of

Castle Contractors, a subcontractor engaged by Mark Five Construction Company, Inc.

Although Mark Five challenges the commission's jurisdiction to consider Gonzalez's claim for

benefits, it does not raise as an issue on appeal the commission's ruling that Gonzalez was Mark

Five's statutory employee.  See Smith v. Weber, 3 Va. App. 379, 381, 350 S.E.2d 213, 214

(1986) (holding that "the subcontractor's employees are employees of the contractor for purposes

of . . . determining applicability of the Act").  Instead, Mark Five contends that the nature of its

business activity establishes that it did not have three or more employees regularly in service in Virginia.

In our review of the commission's ruling on this issue, we employ "our well established standard of review . . . [and] view the evidence in the light most favorable to [Gonzalez], who prevailed before the commission." Westmoreland Coal Co. v. Russell, 31 Va. App. 16, 20, 520 S.E.2d 839, 841 (1999). So viewed, the evidence proved Mark Five is a general contracting business incorporated in the State of Maryland. Although Mark Five is not incorporated in Virginia, it has a certificate of authority from the State Corporation Commission to conduct business in Virginia, and it maintains a resident agent in Virginia as required by its certificate. Mark Five has obtained a certificate to conduct business in Virginia each year since 1996, and earlier under another corporate name.

Describing Mark Five's business, its president testified that Mark Five is a Class A contractor and is "one of the few general contractors that actually does disaster restoration as [its] business." Mark Five generally obtains its work by contracting with insurance companies to repair insured structures after damage caused by a fire, a fallen tree, or some other emergency. At the requests of insurance companies, Mark Five investigates about 800 possible projects each year and contracts to perform about 400 of those projects. Of the projects it performs, 97% are in Maryland and the District of Columbia and 3% in Virginia, and the contracts for those projects range "from a few thousand dollars up to the millions of dollars." Because of the unpredictable nature of the disaster restoration business, Mark Five has between thirty-five to fifty employees at various times, and it engages various subcontractors to perform a significant amount of its restoration work. To be available when needed to perform work in Virginia, Mark Five maintains "current license[s]" in Fairfax County, the City of Alexandria, and various other Virginia localities.

The evidence further proved that Mark Five had six restoration projects in Virginia within the four years prior to March 20, 2001, the date of Gonzalez's injury. According to its president, most of those projects in Virginia "average . . . probably less than a week." However, the Del Hoyo project in Oakton, where Gonzalez was injured, was a major fire restoration project that lasted far in excess of that average. Although Mark Five had estimated four months to complete it, the records indicate that the Del Hoyo project actually required eight months to complete, at a cost of $105,065.28. Mark Five had engaged several subcontractors to perform work on the project.

In addition to the restoration projects it contracts to perform, Mark Five inspects damaged properties for insurance companies and "create[s] a detailed scope of work" document. For example, if an owner has water or fire damage, Mark Five might "create a detailed scope and budget, . . . [so] that [the insurance company] can set reserves and then settle this out with another contractor, usually of the owner's choice, and hopefully close this loss out, but use [Mark Five] as a key witness or an expert witness [concerning] the actual --- the loss." An exhibit indicated that Mark Five investigated six of these properties in Virginia in 2000 and 2001.

The commission found, in pertinent part, that "Mark Five's employees were regularly -- not sporadically -- performing services in . . . Virginia while working on the . . . restoration project over a period of several months," that "Mark Five was using a Virginia resident . . . to perform the work," and "that Mark Five was licensed to perform its business within [Virginia] and held itself out as willing and able to perform restoration work in Virginia." Upon consideration of the entire record, the commission ruled that the evidence in the record "supports the conclusion that Mark Five and its employees performed 'regular' service within [Virginia]."

The "[Workers' Compensation] Act protects 'employees,' as defined in the Act." Intermodal Services, Inc. v. Smith, 234 Va. 596, 600, 364 S.E.2d 221, 223 (1988). Under the Act, "'[e]mployee' means . . . [e]very person, including aliens and minors, in the service of another under any contract of hire or apprenticeship, written or implied, whether lawfully or unlawfully employed." Code § 65.2-101. The Act further provides that "'[e]mployee' shall not mean . . . [e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Id. Applying these provisions of the Act, we have held that "once an employee proves that his or her injury occurred while employed in Virginia, an employer has the burden of producing sufficient evidence upon which the commission can find that the employer employed less than three employees regularly in service in Virginia." Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 2, 427 S.E.2d 428, 429 (1993), aff'd per curiam, 247 Va. 165, 440 S.E.2d 613 (1994). We have further held that "whether an employer has three or more employees 'regularly in service' [is a] pivotal determination[] in deciding if an employer is subject to the Act." Cotman v. Green, 4 Va. App. 256, 258, 356 S.E.2d 447, 448 (1987).

Recently, we affirmed the commission's ruling that the evidence did not prove the "limited contacts by [a non-Virginia] employer and its employees . . . [rose] to the level of being 'regularly in service . . . within the Commonwealth,' as contemplated by the Act." Bois v. Blizzard, 39 Va. App. 216, 220, 571 S.E.2d 924, 926 (2002). We held that the commission properly analyzed the statutory language "to apply not only to the number of employees engaged in performing the employer's established mode of work, but also, to require that the character of the business' 'contacts and activities' within the Commonwealth be more than 'irregular or merely occasional' to allow jurisdiction over the claim." Id. at 222, 571 S.E.2d at 927. As we

noted in <u>Bois</u>, "the plain statutory requirement of at least three employees working with some degree of regularity within [Virginia] is the triggering mechanism." 39 Va. App. at 223, 571 S.E.2d at 927. Where, as in <u>Bois</u>, the number of employees exceeds the statutory minimum, the issue to be determined is "the amount of contact necessary to trigger coverage." 39 Va. App. at 221, 571 S.E.2d at 927.

In view of the extent of the Del Hoyo project and the evidence of Mark Five's business dealings in Virginia, the commission found as follows:

> The mere fact that Mark Five may perform only a small percentage of its overall business in Virginia, does not mean that the "service" of its employees within Virginia is not "regular" -- particularly when we consider the time spent by Mark Five's employees on some of the company's more substantial restoration projects. Mark Five's president . . . testified that Mark Five employs from thirty to fifty employees, is licensed to conduct business in Virginia, and that his company does, in fact, perform approximately 3% of its restoration projects within [Virginia]. Although [he] described most of Mark Five's restoration jobs as being of a relatively brief duration, he also acknowledged that some of the company's more substantial projects take months to complete.

Credible evidence in the record supports these factual findings. Moreover, we agree with the commission's analysis and its conclusion that these facts distinguish Mark Five's business contacts in Virginia from those at issue in <u>Bois</u>. As we noted in <u>Bois</u>, "[t]he only contacts between the employer [, which was a hockey team], the claimant [, who was a hockey player residing in West Virginia], and . . . Virginia were a few isolated bus trips by the . . . team from West Virginia to three locations in Virginia [to play hockey games] during the 1999-2000 hockey season." 39 Va. at 220, 571 S.E.2d at 926. We held that the bus trips and the contests were "contacts with Virginia [that] were occasional and irregular." <u>Id.</u> at 223, 571 S.E.2d at 928.

In contrast, Mark Five has ongoing business in various forms in Virginia. The evidence proved Mark Five has been registered to do business in Virginia since 1996 and engages in

disaster restoration projects in Virginia when contracted to do so by various insurance companies. When requested to do so by insurance companies, Mark Five also inspects damaged properties in Virginia and creates detailed scope of work documents. Although these "scope" assignments generally were brief, they helped to generate future business for Mark Five. Indeed, the commission could reasonably infer that these short-term assignments resulted in projects in Virginia, like the Del Hoyo project. Significantly, the Del Hoyo project, where Gonzalez suffered his injury, was a restoration project that ultimately spanned eight months. The evidence also proved that in performing a project of that duration, Mark Five engaged the services of four subcontractors and regularly employed the requisite number of individuals.

Based on the president's testimony concerning the manner in which Mark Five operates its restoration business, the commission found that Mark Five "held itself out as willing and able to perform restoration work in Virginia" and operates regularly in Virginia. We hold that credible evidence in the record supports the commission's ruling that "Mark Five has not proven that its employees performed only sporadic or irregular services in Virginia." The record, therefore, was sufficient to prove that Mark Five and its employees were "regularly in service in Virginia." Accordingly, we affirm the commission's award.

Affirmed.