605 S.E.2d 330

Melvin G. PERRY

v.

Tom DELISLE, t/a R & T Construction
and Uninsured Employers' Fund.

Record No. 0439–04–1.

Court of Appeals of Virginia,
Chesapeake.

Nov. 30, 2004.

416

418

Beverly Powell Leatherbury, for appellant.

Darlene P. Bradberry (Breeden, Salb, Beasley & DuVall, P.L.C., on brief), Norfolk, for appellee Tom Delisle, t/a R & T Construction.

William C. Walker (Taylor & Walker, P.C., on brief), Norfolk, for appellee Uninsured Employers' Fund.

Present: BENTON and HUMPHREYS, JJ., and COLEMAN, S.J.

BENTON, Judge.

The Workers' Compensation Commission ruled that Tom Delisle, trading as R & T Construction, sustained his burden of proving he regularly employs fewer than three people. Melvin G. Perry contends the commission erred in concluding that Delisle was not within the coverage of the Act and, therefore, in ruling Perry's injury by accident was not compensable. For the reasons that follow, we reverse the commission's decision.

## I.

The essential facts are not contested. The commission found that Melvin G. Perry suffered an injury on April 4, 2001 while he was employed by R & T Construction. Tom Delisle owned R & T Construction and operated it as a sole proprietorship for nine to ten years. Delisle testified that R & T Construction performed only small building construction projects and explained, for example, that "a big drywall job" for a complete house was beyond the capabilities of his employees. He added, however, that R & T Construction uses subcontractors and independent contractors for some of its projects.[1] He also testified that his general practice was to finish one project before beginning another.

The evidence proved that Delisle first employed Perry in 1998. Perry testified that Delisle had four employees at that time. Delisle confirmed that Perry's testimony of four employees in 1998 "could be true." Indeed, Delisle recalled that R & T Construction had four employees at various other times:

Q: Now, during 1998 you had three employees except the time when you had Doug and you had four?

A: I guess so.

Q: Okay, in '99 you had three employees?

A: Part of the time, yes. Sometimes. Not all the time. If they stayed, but if they'd leave I'd be back down to two and I might be up to four.

R & T Construction had three employees (Perry, Ramone Gonzales, and Vincent Mariner) in 2000 and performed building renovations at various sites during that year. The projects included building construction at Ed Hopkins's house "that took a long time" and ongoing, recurrent projects at Hermitage Nursing Home, where R & T Construction "always

---

1. Although Delisle testified that R & T Construction regularly employed from time to time independent contractors and subcontractors to complete its projects, Perry does not contend on this appeal that those independent contractors and subcontractors should be counted in determining the number of persons employed by R & T Construction.

[has] something ... to do." That same year, Delisle began constructing his personal residence. Although Delisle testified that his personal residence was not a R & T Construction project, he also testified that all three of R & T Construction's employees worked at his residence in 2000 and were paid by R & T Construction.

In December 2000, when R & T Construction had employees working on the Hopkins house and on Delisle's residence, Mariner quit. Delisle testified that R & T Construction did not replace Mariner because he "wasn't much of an asset and [the business] didn't have that much work for—really didn't need another employee." After Mariner quit, R & T Construction had two employees, Perry and Gonzales. Between January and August of 2001, R & T Construction paid its two employees for work they performed at Delisle's residence and for construction work on the David Greene residence, another project of R & T Construction. Perry was installing vinyl siding at the Greene residence in April 2001 when he fell from scaffolding and injured his back.

Delisle personally hired other people to perform work constructing his residence in 2000 and 2001. One of those persons was Mickey Parks, whose jobs included trim work and installation of sub-flooring. Delisle testified that he paid Parks from his personal funds and that Parks was not then an employee of R & T Construction. However, in August or September of 2001, several months after Perry suffered his injury, R & T Construction hired Parks as an employee. When Parks was added to the payroll, the Greene residence project had been completed and R & T Construction had started the Del Rossi construction project. Later in 2001, R & T Construction hired Roy Shrieves as an employee. R & T Construction then had four employees and had obtained workers' compensation insurance.

The deputy commissioner found that R & T Construction employed only two employees from December 2000 through April 2001 and that this was not a temporary reduction but, rather, a reflection of the business' usual mode of operation.

Thus, he ruled that R & T Construction was not subject to the jurisdiction of the Act. On review, a majority of the commission affirmed this ruling. Its findings included the following:

> The evidence predominates in establishing that ... Delisle did not employ three or more employees in the same business for three months before [Perry's] accident and for four months following the ... accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to [employ] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 because he did not need the additional worker to perform his business.

> We conclude, therefore, that Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury, and we find no error in the Deputy Commissioner's decision.

## II.

The Workers' Compensation Act provides that "[e]very employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby." Code § 65.2–300(A). Stated in other words, "[t]he Act protects 'employees,' as defined in the Act." *Intermodal Services, Inc. v. Smith,* 234 Va. 596, 600, 364 S.E.2d 221, 223 (1988). Under the definitions in the Act, " '[e]mployee' shall not mean ... [e]mployees of any person, firm or private corporation ... that has regularly in service less than three employees in the same business within this Commonwealth...." Code § 65.2–101.

Applying these provisions of the Act, we have held that "once an employee proves that his or her injury occurred while employed in Virginia, an employer has the burden of

producing sufficient evidence upon which the commission can find that the employer employed less than three employees regularly in service in Virginia." *Craddock Moving & Storage Co. v. Settles,* 16 Va.App. 1, 2, 427 S.E.2d 428, 429 (1993), *aff'd per curiam,* 247 Va. 165, 440 S.E.2d 613 (1994). In our review of the commission's decision, we are governed by the following standards:

> The determination whether the employer has met this burden is made by the Commission after exercising its role as finder of fact. In this role, the Commission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions. "The award of the Commission . . . shall be conclusive and binding as to all questions of fact." Code § 65.2–706(A).

*Bass v. City of Richmond Police Dept.,* 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). When, as in this case, the facts are undisputed, the sole question is one of law—did the commission reach the correct legal conclusion. *City of Norfolk v. Bennett,* 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965).

The record supports the commission's finding that "[t]he evidence predominates in establishing that . . . Delisle did not employ three or more employees in the same business for three months before [Perry's] accident and for four months following the . . . accident." The commission found, however, that R & T Construction's established mode of business did not "necessarily" require three or more employees. In making this latter finding, the commission relied upon Delisle's testimony that he did not replace Mariner, "who left his employ in 2000 because he did not need the additional worker to perform his business." This finding was not sufficient, however, to establish that this seven to eight month period in which R & T Construction had two employees was the established mode of performing the work of R & T Construction, and not just a temporary, transient circumstance.

The principle is well established that "if an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he

should remain subject to the provisions of the Act even ... if the number of his employees temporarily falls below three." *Cotman v. Green,* 4 Va.App. 256, 259, 356 S.E.2d 447, 449 (1987).

> The term "regularly" implies a "practice" or a "constant or periodic custom" of employment. Therefore, we look for "regularly-recurring periods" of employing the requisite number of persons over some reasonable period of time. In order for the employer to be subject to the Act, the recurring periods of employing the requisite number of employees should be the rule and not the exception. Stated differently, an employer's status under the Workers' Compensation Act should not fluctuate between being subject to the Act and being exempt from it.

*Osborne v. Forner,* 36 Va.App. 91, 96, 548 S.E.2d 270, 272 (2001) (citations omitted). As Larson's aptly notes, "[s]ince the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as its labor force exceeds or falls below the minimum from day to day." *Larson's Workers' Compensation Law* § 74.02 (2004) (footnotes omitted). Thus, as a general proposition, "the fact that the number working at the exact time of the injury was below the minimum is of course immaterial." *Id.* (footnote omitted). Obviously, the number of employees "necessarily required" to perform the work during a temporary or transient period is immaterial to the issue of regularity of employment if the pattern of employment over a period of time shows a greater number of employees.

For the years 1998 and 1999, R & T Construction employed four people at various times in its business of home construction·and renovations.[2] Although R & T Construction

---

2. "In determining the number of employees a sole proprietor has 'regularly in service,' a sole proprietor is excluded from the calculus unless an election is made to be included as an employee under workers' compensation coverage and the insurer is notified of the

occasionally employed two people, the record does not indicate that it did so for sustained periods. In 2000, R & T Construction employed three people, until sometime in December. Thus, the evidence tended to prove that for the three calendar years prior to Perry's injury R & T Construction regularly employed at least three people to carry out the established mode of performing the work of its business.

The evidence does not establish that in the first half of 2001 R & T Construction had fewer projects due to an economic downturn or other business circumstance. Rather, the record establishes that this was the time when Delisle's personal residence was occupying some of his attention and resources. Although the record does not disclose the reason Delisle's personal residence was not a R & T Construction project, it shows that R & T Construction paid three of its employees for construction work at Delisle's personal residence in 2000 and paid two of its employees in 2001 for construction work there. The evidence also proved the number of employees dipped to two because of the fortuitous occurrence of Mariner's quitting his employment. When Mariner quit, Delisle was using paid employees of R & T Construction to build his personal residence and paying other laborers from his personal funds.

Parks was one of the laborers Delisle was paying from his personal funds for work at his personal residence. Later in 2001, several months after Perry's injury, R & T Construction hired Parks as an employee of R & T Construction. In 2001, R & T Construction also hired Roy Shrieves, employing a total of four persons. These hirings are consistent with R & T Construction's pattern of employment in 1998, 1999, and 2000.

As we held in *Cotman*, "[t]he number of persons used to carry out the established mode of performing the work of the business is determinative even though the work may be recurrent instead of constant." 4 Va.App. at 259, 356 S.E.2d

election." *Osborne*, 36 Va.App. at 95–96, 548 S.E.2d at 272 (citing Code § 65.2–101(1)(n)). No evidence in the record suggests that Delisle elected such coverage.

at 448. This test "avoids adverse effects from unusual, temporary conditions." *Id.*

> If applicability of the Act was influenced by transient factors, an employer's status could fluctuate between being subject to the Act and exempt from the Act. Such instability would be unsettling for both employers and employees. If an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if one or more of the employees works less than full-time, or if the number of his employees temporarily falls below three.

*Id.* at 259, 356 S.E.2d at 448–49.

Simply put, the evidence proved the number of employees working for R & T Construction dropped to two precisely due to "transient factors." R & T Construction did not terminate Mariner's employment, he quit. Using his own funds, Delisle paid Parks and other laborers to work at his residence, and, as sole owner of R & T Construction, he determined not to hire a third employee at R & T Construction, even though R & T Construction was paying both of its employees to work at Delisle's personal residence. When the work at Delisle's personal residence had been substantially completed and R & T Construction moved to the Del Rossi project, R & T Construction then hired Parks as an employee of R & T Construction. This is precisely the type of temporary, transient circumstance *Cotman* contemplates.

In view of the evidence establishing that R & T Construction employed three or more persons in 1998, 1999, and 2000, and further establishing Delisle's construction of his personal residence for a period including the first four months in 2001, the commission could not reasonably find that the period of seven to eight months in which R & T Construction had two employees was reflective of the established mode in which Delisle operated R & T Construction. We hold, therefore, that the evidence does not support a conclusion that R & T Construction has regularly in service less than three employ-

ees to carry out the established mode of performing its work. Accordingly, we reverse the decision and remand to the commission for entry of an award consistent with this opinion.

*Reversed and remanded.*

HUMPHREYS, Judge, dissenting.

It is well established that, when an employer defends a claim on the ground that it is not subject to the provisions of the Virginia Workers' Compensation statute, the employer has the burden of proving, by a preponderance of the evidence, that it regularly employs less than three employees in Virginia. *Craddock Moving & Storage Co. v. Settles,* 16 Va.App. 1, 2, 427 S.E.2d 428, 429 (1993), *aff'd,* 247 Va. 165, 440 S.E.2d 613 (1994) (*per curiam*); *see also Mark Five Constr. Co. v. Gonzalez,* 42 Va.App. 59, 62, 590 S.E.2d 81, 83 (2003). It is equally settled that, "if an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if . . . the number of his employees *temporarily* falls below three." *Cotman v. Green,* 4 Va.App. 256, 259, 356 S.E.2d 447, 449 (1987) (emphasis added). Here, the majority concludes that the evidence before the commission was insufficient to prove that Delisle regularly employed less than three employees, holding instead that "the commission could not reasonably find that the period of seven to eight months in which R & T Construction had two employees was reflective of the established mode in which Delisle operated R & T Construction." Because I believe that this finding ignores our appellate standard of review, I disagree.

The determination of whether an employer has met its burden of proving that it regularly employed less than three employees "is made by the Commission after exercising its role as finder of fact." *Bass v. City of Richmond Police Dept.,* 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). And, on appeal, we are bound by the commission's findings of fact as long as "there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved."

*Westmoreland Coal Co. v. Campbell,* 7 Va.App. 217, 222, 372 S.E.2d 411, 415 (1988) (emphasis in original).

Also, "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal." *Celanese Fibers Co. v. Johnson,* 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985). Rather, " '[i]t is our duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding.' " *Id.* (quoting *Cook v. City of Waynesboro,* 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983)) (omission in original). Moreover, if there is credible evidence in the record supporting the commission's factual findings, we are bound by those findings regardless of whether there is evidence that may support a contrary finding. *Morris v. Badger Powhatan/Figgie Int'l, Inc.,* 3 Va.App. 276, 279, 348 S.E.2d 876, 877 (1986); *Russell Loungewear v. Gray,* 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

Here, the commission found:

The evidence predominates in establishing that Mr. Delisle did not employ three or more employees in the same business for three months before the claimant's accident and for four months following the claimant's accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to employee [sic] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 *because he did not need the additional worker to perform his business.* The Deputy Commissioner concluded that Mr. Delisle's testimony was credible and we defer to him in this regard.

(Emphasis added). The commission concluded that "Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury. . . ." Because I believe that credible evidence in the record supports this finding, I would affirm.

Specifically, the record indicates that Delisle's business only had two employees during the continuous eight-month period from December 2000 until August 2001. And, more importantly, Delisle "chose not to replace" the employee who left in December of 2000 "because he did not need the additional worker to operate his business." Accordingly, this is not a case where the employer periodically fluctuated "between being subject to the Act and being exempt from it." *Osborne v. Forner,* 36 Va.App. 91, 96, 548 S.E.2d 270, 273 (2001). That is, Delisle did not have three employees one week, two employees the next week, three employees the week after that, and so on and so forth. Nor is this a case, as the majority apparently believes, where the evidence indicates that the established mode of Delisle's business required three employees, and the number of employees only temporarily fell below three. Delisle did not testify that, after his third employee left in December 2000, he intended to eventually rehire a third employee. Rather, Delisle testified that he did not rehire a third employee because he did not need a third employee. This suggests a permanent—rather than temporary—change in the number of employees. The fact that this change did not persist beyond an eight-month period is of little significance because the intended permanency of the change should be measured as of the date of Perry's accident, and not four months later.

The commission clearly relied on Delisle's testimony, which it found to be credible, to conclude that, at the time of Perry's accident in April 2001, the employer's "established mode of business" did not require three or more employees. In my view, then, the record does contain credible evidence supporting the commission's finding that, at the time of the accident, Delisle did not "regularly employ three or more employees." Thus, because I would affirm the commission's dismissal of Perry's claim, I respectfully dissent.