BENTON, J., with whom ELDER and CLEMENTS, JJ., join,
dissenting.
I dissent because the majority of the commission applied an erroneous legal standard when it ruled that Tom Delisle, a sole proprietor trading as R & T Construction, met his burden of proving he was exempt from the Act. If the commission had applied the proper standard, the record supports Melvin G. Perry’s claim for compensation for his injuries. I believe the dissenting commissioner properly concluded that Delisle, trading as R & T Construction, was not exempt from the Act.
The majority reviews this case to determine whether “credible evidence” supported the commission’s finding. The parties agree, however, that the essential facts are not in dispute. In a case involving the interpretation of the statutory term *69 “regularly in service” in Code § 65.2-101, we held that, “[w]hile we generally give great weight and deference, on appeal, to the commission’s construction of the Workers’ Compensation Act, ‘we are not bound by the commission’s legal analysis in this or prior cases.’ ” Bois v. Huntington Blizzard, 39 Va.App. 216, 222, 571 S.E.2d 924, 927 (2002). This standard of review is all the more pertinent when, as here, the commission plainly applied an erroneous legal standard in determining that Delisle and R & T Construction were exempt from the Act.
When, as in this case, the facts are undisputed, the sole question is one of law-did the commission reach the correct legal conclusion. City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965). The governing principles applicable to this case are well established. Under the definitions in the Act, “ ‘[e]mployee’ shall not mean ... [ejmployees of any person, firm or private corporation ... that has regularly in service less than three employees in the same business within this Commonwealth____” Code § 65.2-101. “[I]f an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even ... if the number of his employees temporarily falls below three.” Cotman v. Green, 4 Va.App. 256, 259, 356 S.E.2d 447, 449 (1987).
The term “regularly” implies a “practice” or a “constant or periodic custom” of employment. Therefore, we look for “regularly-recurring periods” of employing the requisite number of persons over some reasonable period of time. In order for the employer to be subject to the Act, the recurring periods of employing the requisite number of employees should be the rule and not the exception. Stated differently, an employer’s status under the Workers’ Compensation Act should not fluctuate between being subject to the Act and being exempt from it.
Osborne v. Forner, 36 Va.App. 91, 96, 548 S.E.2d 270, 272 (2001) (citations omitted).
*70 Applying the law to the facts of the case, the commission erroneously ruled as follows:
The evidence predominates in establishing that ... Delisle did not employ three or more employees in the same business for three months before [Perry’s] accident and for four months following the ... accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to [employ] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 because he did not need the additional worker to perform his business.
We conclude, therefore, that Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant’s accident and injury____
Clearly, the number of employees “necessarily required” to perform the work is not the same as whether an “employer regularly employs three or more persons to carry out the established mode of performing the work of the business.” Cotman, 4 Va.App. at 259, 356 S.E.2d at 449. What was “necessarily required” was simply irrelevant to the issue. Obviously, the number of employees “necessarily required” to perform the work during a temporary or transient period is immaterial to the issue of regularity of employment when the pattern of employment over a period of time shows a greater number of employees.
In determining this standard of “regularly in service,” we have often cited approvingly from Larson, the leading treatise. See e.g., Cotman, 4 Va.App. at 259, 356 S.E.2d at 449. As Larson’s aptly notes, “[s]ince the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as its labor force exceeds or falls below the minimum from day to day.” Larson’s Workers’ Compensation Law § 74.02 (2004) (footnotes omitted). It follows, therefore, that “if an employer has once *71 regularly employed enough men to come under the act, it remains there even when the number employed temporarily falls below the minimum.” Id. Thus, as a general proposition, “the fact that the number working at the exact time of the injury was below the minimum is of course immaterial.” Id. We have uniformly applied these principles. See e.g., Bois, 39 Va.App. at 222, 571 S.E.2d at 927; Osborne, 36 Va.App. at 96, 548 S.E.2d at 272; Cotman, 4 Va.App. at 259, 356 S.E.2d at 449.
Indeed, to focus upon the number of employees “necessarily required” at a finite period of time subverts the purpose of the Act. As we held in Cotman, the policy underlying the Act favors coverage when the number of employees oscillates between coverage and exemption.
Viewing the language, “regularly in service,” in this manner avoids adverse effects from unusual, temporary conditions. If applicability of the Act was influenced by transient factors, an employer’s status could fluctuate between being subject to the Act and exempt from the Act. Such instability would be unsettling for both employers and employees. If an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if one or more of the employees works less than full-time, or if the number of his employees temporarily falls below three.
Cotman, 4 Va.App. at 259, 356 S.E.2d at 449 (citing 1C A. Larson, Workmen’s Compensation § 52.20 (1986)).
It is undisputed that Delisle’s established mode of business in the years 1998,1999, and 2000 was to employ three or more persons to perform the work of R & T Construction. Delisle testified that R & T Construction performs building renovations at various sites including ongoing, recurrent projects at Hermitage Nursing Home, where R & T Construction “always [has] something ... to do.” In addition to its own employees, R & T Construction uses subcontractors and independent contractors for some of its projects.
*72 The evidence does not establish that in the first half of 2001 R & T Construction had fewer projects due to an economic downturn or other business circumstances. The record establishes instead that the number of employees fluctuated because of circumstances of a transitory and temporary nature. Indeed, the record undisputedly proved that the number of employees at R & T Construction dipped to two because of the fortuitous occurrence of Vincent Mariner quitting his employment. He was not terminated for economic reasons but, rather, quit because he moved from the area. Thus, Delisle cannot rely upon an economic or business reason for the decrease in the number of employees.
The record also proved this was the time when Delisle’s personal residence was occupying some of his attention and resources. Dehsle began constructing his personal residence in 2000 and continued to do so into 2001. Although Delisle testified that his personal residence was not a R & T Construction project, he also testified that all three of R & T Construction’s employees worked at his residence in 2000. The record does not disclose the reason Delisle’s personal residence was not a R & T Construction project; however, the evidence shows that R & T Construction paid three of its employees for construction work at Delisle’s personal residence. These objective facts are significant when “the focus shifts to the character of the business and away from the character of the employment.” Id. at 259, 356 S.E.2d at 448.
The transitory nature of these circumstances was further established by proof that when Mariner quit, Delisle, who operated R & T Construction as a sole proprietor, was using paid employees of R & T Construction to build his personal residence while, at the same time, he was paying other laborers from his “personal” funds to work on his personal residence. One of the persons Delisle personally hired to perform work constructing his residence was Mickey Parks, whose jobs included trim work and installation of sub-flooring. Later in 2001, two months after Perry’s injury, Delisle hired Parks as an employee of R & T Construction. Delisle then obtained workers’ compensation insurance. In 2001, Delisle also hired *73 Roy Shrieves to work for R & T Construction, employing at that time a total of four persons. These hirings, which occurred after Delisle’s residence had been substantially constructed, are consistent with R & T Construction’s pattern in 1998, 1999, and 2000 of regularly employing three or more persons.
Simply put, the evidence proved the number of employees working for R & T Construction dropped to two precisely due to temporary circumstances and “transient factors,” which we held in Cotman would not support an exemption from the Act. 4 Va.App. at 259, 856 S.E.2d at 449. These temporary, transient circumstances that existed at the time of Perry’s injury should not have exempted Delisle from the obligation to insure his employees under the Act. The pattern of hirings over the period from 1998 to 2001 are consistent with R & T Construction’s “established mode of performing the work of the business.” For these reasons, I dissent.