COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton, Elder, Bumgardner, Frank, Humphreys,
                 Clements, Felton, Kelsey, McClanahan and Haley
Argued at Richmond, Virginia


MELVIN G. PERRY

                                                                                    OPINION BY
v.          Record No. 0439-04-1                       JUDGE ROBERT J. HUMPHREYS
                                                                                    JULY 12, 2005

TOM DELISLE, t/a R & T CONSTRUCTION AND
  UNINSURED EMPLOYERS' FUND


UPON REHEARING EN BANC

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Beverly Powell Leatherbury (Beverly Powell Leatherbury PLC, on
        brief), for appellant.

        Darlene P. Bradberry (Breeden, Salb, Beasley & DuVall, P.L.C.,
        on briefs), for appellee Tom Delisle, t/a R & T Construction.

        William C. Walker (Taylor & Walker, P.C., on brief), for appellee
        Uninsured Employers' Fund.


        This matter comes before the Court on a rehearing *en banc* following the issuance of a

divided panel opinion of this Court.  Appellant Melvin G. Perry ("Perry") appeals a ruling from

the Virginia Workers' Compensation Commission in which the commission held that appellee

Tom Delisle ("Delisle") sustained his burden of proving that his business has regularly in service

less than three employees and, as a result, is not subject to the provisions of the Virginia

Workers' Compensation Act.  Because credible evidence in the record supports the

commission's finding, we affirm the judgment below.

## I. BACKGROUND

The relevant facts are not in dispute. On April 4, 2001, Perry was installing vinyl siding on a house when he fell off of the scaffolding, injuring his back, head, and feet. Perry filed a claim with the commission, seeking compensation for wage loss, compensation for permanent disability, and payment of lifetime medical costs associated with his injuries.

Delisle defended the claim by arguing that he regularly employed less than three employees and, therefore, was not subject to the provisions of the Act. At the hearing before the deputy commissioner, Delisle testified that he had been operating R & T Construction for "nine or ten years." Delisle agreed that he employed three employees "throughout 1999 and for most of 2000" and that he again employed three employees beginning in the fall of 2001. From December 2000 until August 2001, however, Delisle testified that he only had two employees. And, when asked about the employee who left the company in November 2000, Delisle testified as follows:

> Q: Do you recall when Mr. Mariner left?
>
> A: He left the year before and we were working on Ed Popkins house.
>
> Q: Okay. Do you recall when?
>
> A: Let me think back now. I would say October of 2000, maybe, November of 2000, something like that.
>
> Q: Okay. . . . [D]id you replace him?
>
> A: No.
>
> Q: And why was that?
>
> A: Well, I mean, he really wasn't much of an asset and we didn't have that much work for—*really didn't need another employee.*

(Emphasis added).

- 2 -

The deputy commissioner held that Delisle was not subject to the provisions of the Workers' Compensation Act, reasoning that, at the time of the accident, Delisle had "regularly in service less than three employees." Specifically, by decision issued July 1, 2003, the deputy commissioner

> found that Tom Delisle t/a R & T Construction employed two employees from December 2000 through August 2001. Gonzales and Delisle credibly testified that Tom Delisle t/a R & T Construction employed only Gonzales and Perry from December 2000 through August 2001. Tom Delisle t/a R & T Construction's records support this credible testimony as does Parks's credible testimony that he did not begin working for Tom Delisle t/a R & T Construction until shortly before his birthday on October 2, 2001.

The deputy commissioner also noted that "Tom Delisle t/a R & T Construction operated with only two employees for four months before Perry's fall and then continued to operate with two employees for another four months after this incident despite Perry's inability to return to the full duties of his pre-injury employment." Accordingly, the deputy commissioner concluded that this was not a case where the employer should remain subject to the provisions of the Act because the number of employees "temporarily" fell below three, reasoning that "Delisle's decision to increase the size of his work force after eight months of operating with only two employees is not found to present the kind of 'instability' contemplated by the Court of Appeals in [Cotman v. Green, 4 Va. App. 256, 356 S.E.2d 447 (1987)]."

Perry petitioned for review by the full commission, which, by decision issued January 22, 2004, affirmed the deputy commissioner. The commission noted that

> The evidence predominates in establishing that Mr. Delisle did not employ three or more employees in the same business for three months before the claimant's accident and for four months following the claimant's accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to employee [sic] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ

- 3 -

in 2000 because he did not need the additional worker to perform his business.

Accordingly, the commission concluded that "Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury."

Perry appealed. On November 30, 2004, a three-judge panel of this Court, with one judge dissenting, reversed the commission, reasoning that Delisle failed "to establish that [the] seven to eight month period in which R & T Construction had two employees was the established mode of performing the work of R & T Construction, and not just a temporary, transient circumstance." Perry v. Delisle, 44 Va. App. 415, 422, 605 S.E.2d 330, 334 (2004). By order dated February 1, 2005, this Court granted the appellees' petitions for rehearing *en banc* and stayed the mandate of the panel decision. We now affirm.

## II. ANALYSIS

On appeal from a decision of the Workers' Compensation Commission, "'[i]t is our duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding.'" Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985) (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983)) (omission in original). Accordingly, "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal." Id. Rather, if there is credible evidence in the record supporting the commission's factual findings, we are bound by those findings regardless of whether there is evidence that may support a contrary finding. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

The Workers' Compensation Act provides that "[e]very employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title

- 4 -

respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby." Code § 65.2-300(A). However, "'[e]mployee' shall not mean . . . [e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Code § 65.2-101. Thus, an employer may defeat a workers' compensation claim if it can prove, by a preponderance of the evidence, that it is not subject to the provisions of the Act because it "has regularly in service" less than three employees in the Commonwealth of Virginia. Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 2, 427 S.E.2d 428, 429 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994) (*per curiam*); see also Mark Five Constr. Co. v. Gonzalez, 42 Va. App. 59, 62, 590 S.E.2d 81, 83 (2003).

However, we have held that, "if an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if . . . the number of his employees temporarily falls below three." Cotman v. Green, 4 Va. App. 256, 259, 356 S.E.2d 447, 449 (1987). As we noted in Osborne v. Forner, 36 Va. App. 91, 548 S.E.2d 270 (2001), because "[t]he term 'regularly' implies a 'practice' or a 'constant or periodic custom' of employment," the commission should "look for 'regularly-recurring periods' of employing the requisite number of persons over some reasonable period of time." Id. at 96, 548 S.E.2d at 272 (citations omitted). That is, to avoid having "an employer's status . . . fluctuate between being subject to the Act and being exempt from it," an employer will be deemed to have "regularly in service" three or more employees if "the recurring periods of employing the requisite number of employees" is "the rule and not the exception." Id. Accordingly, to determine whether an employer is subject to the provisions of the Act, the commission must also look to "[t]he number of persons used to carry out the established mode of performing the work of the business." Cotman, 4 Va. App. at 259, 356

S.E.2d at 448. Overall, the commission's focus should be on "the character of the business" rather than "the character of the employment relationship." Id.

Thus, when an employer defends a claim on the ground that it is not subject to the provisions of the Act, the commission must make two distinct inquiries. First, the commission must determine whether the employer carried its burden of proving, by a preponderance of the evidence, that, at the time of the alleged incident, it had "regularly in service" fewer than three employees in Virginia. Second, if the employer sustains this burden of proof, the commission must then determine whether, at the time of the alleged incident, the employer's "established mode of performing business" regularly required three or more employees. If so, the employer will be deemed subject to the provisions of the Act even though it had fewer than three employees on the date of the alleged incident. As we noted in Cotman, this two-pronged test prevents an employer from avoiding liability on the basis of an "unusual, temporary condition[]," whereby the employer has fewer employees than its business regularly requires. Id. at 259, 356 S.E.2d at 448.

The determination of whether an employer has met its burden of proving that it regularly employs fewer than three employees "is made by the Commission after exercising its role as finder of fact." Bass v. City of Richmond Police Dept., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999); see Osborne, 36 Va. App. at 95, 548 S.E.2d at 272 ("[W]hether the facts bring a person within the law's designation, is usually a question of fact."); see also Lynch v. Lee, 19 Va. App. 230, 234, 450 S.E.2d 391, 393 (1994) (affirming the commission's determination that the employer did not "regularly employ" three or more employees, noting that "[s]ufficient credible evidence supports the commission's finding that the laborers . . . were part-time and seasonal"); cf. Mark Five Constr. Co., 42 Va. App. at 64-65, 590 S.E.2d at 83 (affirming the commission's determination that the "service" of appellant's employees in Virginia was "regular" rather than

- 6 -

"sporadic or irregular," reasoning that "[c]redible evidence in the record supports the commission's ruling"). Similarly, the determination of whether an employer's "established mode of business" requires three or more employees is a finding of fact to which this Court gives deference on appeal. See Osborne, 36 Va. App. at 97, 548 S.E.2d at 273 (affirming the commission's conclusion that the employer did not require three or more employees to carry out its established mode of business, reasoning that this finding was supported by "credible evidence" that the employer's "employment of three persons on the day [the worker] was injured was the exception and not the rule"); cf. Bois v. Huntington Blizzard, 39 Va. App. 216, 222 n.1, 571 S.E.2d 924, 927 n.1 (2002) ("We note that most of the cases analyzing Code § 65.2-101 have discussed the term "regularly in service" in relation to the number of employees necessary for coverage because that was the *factual basis* for disputing coverage." (emphasis added)).

Here, the commission found that "Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury . . . ." The commission reasoned that, at the time of Perry's accident, Delisle did not require three or more employees to perform his "established mode of business." In making this determination, the commission relied on Delisle's explanation that he "chose not to replace a third employee who left his employ in 2000 because he did not need the additional worker to perform his business."

Thus, the commission made two factual determinations: (1) at the time of Perry's accident, Delisle did not "regularly employ" three or more employees, and (2) at the time of Perry's accident, Delisle's "established mode of business" did not require three or more employees. On appeal, we are bound by these findings of fact as long as "there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved." Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988)

- 7 -

(emphasis in original); see also United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (noting that, if the lower court's "'account of the evidence is plausible in light of the record viewed in its entirety,'" the appellate court "will not reverse the [lower] court's finding simply because we have become convinced that we would have decided the fact differently" (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985))).

Under the circumstances of this case, there is credible evidence in the record that supports the commission's findings. Specifically, the commission's factual finding that, at the time of Perry's accident, Delisle did not "regularly employ" three or more employees is supported by Delisle's testimony that his business only had two employees during the continuous eight-month period from December of 2000 until August of 2001. The commission's factual finding that Delisle's "established mode of performing business" did not regularly require three or more employees is supported by Delisle's testimony that he chose not to replace the employee who left in November of 2000 "because he did not need the additional worker to operate his business." Also, as noted by the deputy commissioner, the record indicates that Delisle "continued to operate with two employees for another four months after [Perry's] incident despite Perry's inability to return to the full duties of his pre-injury employment." The fact that Delisle operated his business for four months with, in effect, one and a half employees supports the commission's conclusion that, at the time of the accident, Delisle did not require three or more employees to carry out the "established mode" of performing his business.[1]

The commission clearly relied on Delisle's testimony, which it found to be credible, to conclude that, at the time of Perry's accident in April 2001, Delisle did not "regularly employ"

---

[1] Clearly, Delisle's "established mode of performing business" changed between the date that Delisle hired Perry and the date of Perry's accident. Although an employer's status should not fluctuate, nor should his required coverage under the Act be frozen in time, the number of employees required to carry out an "established mode of performing business" may change over time.

three or more employees, nor did his "established mode of business" require three or more employees.  And, because the record contains credible evidence supporting these factual determinations, we affirm.

<u>Affirmed.</u>

Benton, J., with whom Elder and Clements, JJ., join, dissenting.

I dissent because the majority of the commission applied an erroneous legal standard when it ruled that Tom Delisle, a sole proprietor trading as R & T Construction, met his burden of proving he was exempt from the Act. If the commission had applied the proper standard, the record supports Melvin G. Perry's claim for compensation for his injuries. I believe the dissenting commissioner properly concluded that Delisle, trading as R & T Construction, was not exempt from the Act.

The majority reviews this case to determine whether "credible evidence" supported the commission's finding. The parties agree, however, that the essential facts are not in dispute. In a case involving the interpretation of the statutory term "regularly in service" in Code § 65.2-101, we held that, "[w]hile we generally give great weight and deference, on appeal, to the commission's construction of the Workers' Compensation Act, 'we are not bound by the commission's legal analysis in this or prior cases.'" Bois v. Huntington Blizzard, 39 Va. App. 216, 222, 571 S.E.2d 924, 927 (2002). This standard of review is all the more pertinent when, as here, the commission plainly applied an erroneous legal standard in determining that Delisle and R & T Construction were exempt from the Act.

When, as in this case, the facts are undisputed, the sole question is one of law -- did the commission reach the correct legal conclusion. City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965). The governing principles applicable to this case are well established. Under the definitions in the Act, "'[e]mployee' shall not mean . . . [e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Code § 65.2-101. "[I]f an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even . . . if the

- 10 -

number of his employees temporarily falls below three." Cotman v. Green, 4 Va. App. 256, 259,

356 S.E.2d 447, 449 (1987).

> The term "regularly" implies a "practice" or a "constant or periodic custom" of employment. Therefore, we look for "regularly-recurring periods" of employing the requisite number of persons over some reasonable period of time. In order for the employer to be subject to the Act, the recurring periods of employing the requisite number of employees should be the rule and not the exception. Stated differently, an employer's status under the Workers' Compensation Act should not fluctuate between being subject to the Act and being exempt from it.

Osborne v. Forner, 36 Va. App. 91, 96, 548 S.E.2d 270, 272 (2001) (citations omitted).

Applying the law to the facts of the case, the commission erroneously ruled as follows:

> The evidence predominates in establishing that . . . Delisle did not employ three or more employees in the same business for three months before [Perry's] accident and for four months following the . . . accident. Furthermore, the record does not reflect that *Mr. Delisle's established mode of performing the work of his business necessarily required him to [employ] three or more employees.* To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 because he did not need the additional worker to perform his business.
>
> We conclude, therefore, that Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury . . . .

Clearly, the number of employees "necessarily required" to perform the work is not the

same as whether an "employer regularly employs three or more persons to carry out the

established mode of performing the work of the business." Cotman, 4 Va. App. at 259, 356

S.E.2d at 449. What was "necessarily required" was simply irrelevant to the issue. Obviously,

the number of employees "necessarily required" to perform the work during a temporary or

transient period is immaterial to the issue of regularity of employment when the pattern of

employment over a period of time shows a greater number of employees.

In determining this standard of "regularly in service," we have often cited approvingly from Larson, the leading treatise. See e.g., Cotman, 4 Va. App. at 259, 356 S.E.2d at 449. As Larson's aptly notes, "[s]ince the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as its labor force exceeds or falls below the minimum from day to day." Larson's Workers' Compensation Law § 74.02 (2004) (footnotes omitted). It follows, therefore, that "if an employer has once regularly employed enough men to come under the act, it remains there even when the number employed temporarily falls below the minimum." Id. Thus, as a general proposition, "the fact that the number working at the exact time of the injury was below the minimum is of course immaterial." Id. We have uniformly applied these principles. See e.g., Bois, 39 Va. App. at 222, 571 S.E.2d at 927; Osborne, 36 Va. App. at 96, 548 S.E.2d at 272; Cotman, 4 Va. App. at 259, 356 S.E.2d at 449.

Indeed, to focus upon the number of employees "necessarily required" at a finite period of time subverts the purpose of the Act. As we held in Cotman, the policy underlying the Act favors coverage when the number of employees oscillates between coverage and exemption.

> Viewing the language, "regularly in service," in this manner avoids adverse effects from unusual, temporary conditions. If applicability of the Act was influenced by transient factors, an employer's status could fluctuate between being subject to the Act and exempt from the Act. Such instability would be unsettling for both employers and employees. If an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if one or more of the employees works less than full-time, or if the number of his employees temporarily falls below three.

Cotman, 4 Va. App. at 259, 356 S.E.2d at 449 (citing 1C A. Larson, Workmen's Compensation § 52.20 (1986)).

It is undisputed that Delisle's established mode of business in the years 1998, 1999, and 2000 was to employ three or more persons to perform the work of R & T Construction. Delisle testified that R & T Construction performs building renovations at various sites including ongoing, recurrent projects at Hermitage Nursing Home, where R & T Construction "always [has] something . . . to do." In addition to its own employees, R & T Construction uses subcontractors and independent contractors for some of its projects.

The evidence does not establish that in the first half of 2001 R & T Construction had fewer projects due to an economic downturn or other business circumstances. The record establishes instead that the number of employees fluctuated because of circumstances of a transitory and temporary nature. Indeed, the record undisputedly proved that the number of employees at R & T Construction dipped to two because of the fortuitous occurrence of Vincent Mariner quitting his employment. He was not terminated for economic reasons but, rather, quit because he moved from the area. Thus, Delisle cannot rely upon an economic or business reason for the decrease in the number of employees.

The record also proved this was the time when Delisle's personal residence was occupying some of his attention and resources. Delisle began constructing his personal residence in 2000 and continued to do so into 2001. Although Delisle testified that his personal residence was not a R & T Construction project, he also testified that all three of R & T Construction's employees worked at his residence in 2000. The record does not disclose the reason Delisle's personal residence was not a R & T Construction project; however, the evidence shows that R & T Construction paid three of its employees for construction work at Delisle's personal residence. These objective facts are significant when "the focus shifts to the character of the business and away from the character of the employment." Id. at 259, 356 S.E.2d at 448.

The transitory nature of these circumstances was further established by proof that when Mariner quit, Delisle, who operated R & T Construction as a sole proprietor, was using paid employees of R & T Construction to build his personal residence while, at the same time, he was paying other laborers from his "personal" funds to work on his personal residence. One of the persons Delisle personally hired to perform work constructing his residence was Mickey Parks, whose jobs included trim work and installation of sub-flooring. Later in 2001, two months after Perry's injury, Delisle hired Parks as an employee of R & T Construction. Delisle then obtained workers' compensation insurance. In 2001, Delisle also hired Roy Shrieves to work for R & T Construction, employing at that time a total of four persons. These hirings, which occurred after Delisle's residence had been substantially constructed, are consistent with R & T Construction's pattern in 1998, 1999, and 2000 of regularly employing three or more persons.

Simply put, the evidence proved the number of employees working for R & T Construction dropped to two precisely due to temporary circumstances and "transient factors," which we held in Cotman would not support an exemption from the Act. 4 Va. App. at 259, 356 S.E.2d at 449. These temporary, transient circumstances that existed at the time of Perry's injury should not have exempted Delisle from the obligation to insure his employees under the Act. The pattern of hirings over the period from 1998 to 2001 are consistent with R & T Construction's "established mode of performing the work of the business." For these reasons, I dissent.

Tuesday                1st

February, 2005.


Melvin G. Perry,                                                                    Appellant,

 against          Record No. 0439-04-1
                  Claim No. 209-61-41

Tom Delisle, t/a R & T Construction and
   Uninsured Employers' Fund,                                                       Appellees.


Upon a Petition for Rehearing En Banc

Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata*, Frank
Humphreys, Clements, Felton, Kelsey and McClanahan


On December 14, 2004 came appellee Tom Delisle, t/a R & T Construction, by counsel, and on December 17, 2004 came appellee Uninsured Employers' Fund, by counsel, and filed petitions praying that the Court set aside the judgment rendered herein on November 30, 2004, and grant a rehearing *en banc* thereof.

On consideration whereof, the petitions for rehearing *en banc* are granted, the mandate entered herein on November 30, 2004 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. Each appellee shall attach as an addendum to their respective opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter.  It is further ordered that each appellee shall file with the clerk of this Court six additional copies of the appendix previously filed in this case.  Should the appellant file an answering brief, he shall file one brief that addresses all issues raised by each appellee in their respective pleadings.

_____

   * Judge Rosemarie Annunziata participated in the consideration of this case prior to the effective date of her retirement on December 31, 2004.

A Copy,

   Teste:

                              Cynthia L. McCoy, Clerk

   By:

                              Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


MELVIN G. PERRY

v.        Record No. 0439-04-1

OPINION BY
JUDGE JAMES W. BENTON, JR.
NOVEMBER 30, 2004

TOM DELISLE, t/a R & T CONSTRUCTION AND
 UNINSURED EMPLOYERS' FUND


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Beverly Powell Leatherbury for appellant.

Darlene P. Bradberry (Breeden, Salb, Beasley & DuVall, P.L.C., on
brief), for appellee Tom Delisle, t/a R & T Construction.

William C. Walker (Taylor & Walker, P.C., on brief), for appellee
Uninsured Employers' Fund.


The Workers' Compensation Commission ruled that Tom Delisle, trading as R & T

Construction, sustained his burden of proving he regularly employs fewer than three people.

Melvin G. Perry contends the commission erred in concluding that Delisle was not within the

coverage of the Act and, therefore, in ruling Perry's injury by accident was not compensable.

For the reasons that follow, we reverse the commission's decision.

I.

The essential facts are not contested. The commission found that Melvin G. Perry

suffered an injury on April 4, 2001 while he was employed by R & T Construction. Tom Delisle

owned R & T Construction and operated it as a sole proprietorship for nine to ten years. Delisle

testified that R & T Construction performed only small building construction projects and

explained, for example, that "a big drywall job" for a complete house was beyond the

capabilities of his employees. He added, however, that R & T Construction uses subcontractors and independent contractors for some of its projects.[1] He also testified that his general practice was to finish one project before beginning another.

The evidence proved that Delisle first employed Perry in 1998. Perry testified that Delisle had four employees at that time. Delisle confirmed that Perry's testimony of four employees in 1998 "could be true." Indeed, Delisle recalled that R & T Construction had four employees at various other times:

> Q: Now, during 1998 you had three employees except the time when you had Doug and you had four?
>
> A: I guess so.
>
> Q: Okay, in '99 you had three employees?
>
> A: Part of the time, yes. Sometimes. Not all the time. If they stayed, but if they'd leave I'd be back down to two and I might be up to four.

R & T Construction had three employees (Perry, Ramone Gonzales, and Vincent Mariner) in 2000 and performed building renovations at various sites during that year. The projects included building construction at Ed Hopkins's house "that took a long time" and ongoing, recurrent projects at Hermitage Nursing Home, where R & T Construction "always [has] something . . . to do." That same year, Delisle began constructing his personal residence. Although Delisle testified that his personal residence was not a R & T Construction project, he also testified that all three of R & T Construction's employees worked at his residence in 2000 and were paid by R & T Construction.

---

[1] Although Delisle testified that R & T Construction regularly employed from time to time independent contractors and subcontractors to complete its projects, Perry does not contend on this appeal that those independent contractors and subcontractors should be counted in determining the number of persons employed by R & T Construction.

In December 2000, when R & T Construction had employees working on the Hopkins house and on Delisle's residence, Mariner quit. Delisle testified that R & T Construction did not replace Mariner because he "wasn't much of an asset and [the business] didn't have that much work for -- really didn't need another employee." After Mariner quit, R & T Construction had two employees, Perry and Gonzales. Between January and August of 2001, R & T Construction paid its two employees for work they performed at Delisle's residence and for construction work on the David Greene residence, another project of R & T Construction. Perry was installing vinyl siding at the Greene residence in April 2001 when he fell from scaffolding and injured his back.

Delisle personally hired other people to perform work constructing his residence in 2000 and 2001. One of those persons was Mickey Parks, whose jobs included trim work and installation of sub-flooring. Delisle testified that he paid Parks from his personal funds and that Parks was not then an employee of R & T Construction. However, in August or September of 2001, several months after Perry suffered his injury, R & T Construction hired Parks as an employee. When Parks was added to the payroll, the Greene residence project had been completed and R & T Construction had started the Del Rossi construction project. Later in 2001, R & T Construction hired Roy Shrieves as an employee. R & T Construction then had four employees and had obtained workers' compensation insurance.

The deputy commissioner found that R & T Construction employed only two employees from December 2000 through April 2001 and that this was not a temporary reduction but, rather, a reflection of the business' usual mode of operation. Thus, he ruled that R & T Construction was not subject to the jurisdiction of the Act. On review, a majority of the commission affirmed this ruling. Its findings included the following:

> The evidence predominates in establishing that . . . Delisle did
> not employ three or more employees in the same business for three

months before [Perry's] accident and for four months following the . . . accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to [employ] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 because he did not need the additional worker to perform his business.

We conclude, therefore, that Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury, and we find no error in the Deputy Commissioner's decision.

## II.

The Workers' Compensation Act provides that "[e]very employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby." Code § 65.2-300(A). Stated in other words, "[t]he Act protects 'employees,' as defined in the Act." Intermodal Services, Inc. v. Smith, 234 Va. 596, 600, 364 S.E.2d 221, 223 (1988). Under the definitions in the Act, "'[e]mployee' shall not mean . . . [e]mployees of any person, firm or private corporation . . . that has regularly in service less than three employees in the same business within this Commonwealth . . . ." Code § 65.2-101.

Applying these provisions of the Act, we have held that "once an employee proves that his or her injury occurred while employed in Virginia, an employer has the burden of producing sufficient evidence upon which the commission can find that the employer employed less than three employees regularly in service in Virginia." Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 2, 427 S.E.2d 428, 429 (1993), aff'd per curiam, 247 Va. 165, 440 S.E.2d 613 (1994). In our review of the commission's decision, we are governed by the following standards:

The determination whether the employer has met this burden is made by the Commission after exercising its role as finder of fact. In this role, the Commission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions. "The award of the Commission . . . shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A).

Bass v. City of Richmond Police Dept., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). When, as in this case, the facts are undisputed, the sole question is one of law -- did the commission reach the correct legal conclusion. City of Norfolk v. Bennett, 205 Va. 877, 880, 140 S.E.2d 655, 657 (1965).

The record supports the commission's finding that "[t]he evidence predominates in establishing that . . . Delisle did not employ three or more employees in the same business for three months before [Perry's] accident and for four months following the . . . accident." The commission found, however, that R & T Construction's established mode of business did not "necessarily" require three or more employees. In making this latter finding, the commission relied upon Delisle's testimony that he did not replace Mariner, "who left his employ in 2000 because he did not need the additional worker to perform his business." This finding was not sufficient, however, to establish that this seven to eight month period in which R & T Construction had two employees was the established mode of performing the work of R & T Construction, and not just a temporary, transient circumstance.

The principle is well established that "if an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even . . . if the number of his employees temporarily falls below three." Cotman v. Green, 4 Va. App. 256, 259, 356 S.E.2d 447, 449 (1987).

The term "regularly" implies a "practice" or a "constant or periodic custom" of employment. Therefore, we look for "regularly-recurring periods" of employing the requisite number of persons over some reasonable period of time. In order for the

- 5 -

employer to be subject to the Act, the recurring periods of employing the requisite number of employees should be the rule and not the exception. Stated differently, an employer's status under the Workers' Compensation Act should not fluctuate between being subject to the Act and being exempt from it.

Osborne v. Forner, 36 Va. App. 91, 96, 548 S.E.2d 270, 272 (2001) (citations omitted). As Larson's aptly notes, "[s]ince the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as its labor force exceeds or falls below the minimum from day to day." Larson's Workers' Compensation Law § 74.02 (2004) (footnotes omitted). Thus, as a general proposition, "the fact that the number working at the exact time of the injury was below the minimum is of course immaterial." Id. (footnote omitted). Obviously, the number of employees "necessarily required" to perform the work during a temporary or transient period is immaterial to the issue of regularity of employment if the pattern of employment over a period of time shows a greater number of employees.

For the years 1998 and 1999, R & T Construction employed four people at various times in its business of home construction and renovations.[2] Although R & T Construction occasionally employed two people, the record does not indicate that it did so for sustained periods. In 2000, R & T Construction employed three people, until sometime in December. Thus, the evidence tended to prove that for the three calendar years prior to Perry's injury R & T Construction regularly employed at least three people to carry out the established mode of performing the work of its business.

---

[2] "In determining the number of employees a sole proprietor has 'regularly in service,' a sole proprietor is excluded from the calculus unless an election is made to be included as an employee under workers' compensation coverage and the insurer is notified of the election." Osborne, 36 Va. App. at 95-96, 548 S.E.2d at 272 (citing Code § 65.2-101(1)(n)). No evidence in the record suggests that Delisle elected such coverage.

The evidence does not establish that in the first half of 2001 R & T Construction had fewer projects due to an economic downturn or other business circumstance. Rather, the record establishes that this was the time when Delisle's personal residence was occupying some of his attention and resources. Although the record does not disclose the reason Delisle's personal residence was not a R & T Construction project, it shows that R & T Construction paid three of its employees for construction work at Delisle's personal residence in 2000 and paid two of its employees in 2001 for construction work there. The evidence also proved the number of employees dipped to two because of the fortuitous occurrence of Mariner's quitting his employment. When Mariner quit, Delisle was using paid employees of R & T Construction to build his personal residence and paying other laborers from his personal funds.

Parks was one of the laborers Delisle was paying from his personal funds for work at his personal residence. Later in 2001, several months after Perry's injury, R & T Construction hired Parks as an employee of R & T Construction. In 2001, R & T Construction also hired Roy Shrieves, employing a total of four persons. These hirings are consistent with R & T Construction's pattern of employment in 1998, 1999, and 2000.

As we held in Cotman, "[t]he number of persons used to carry out the established mode of performing the work of the business is determinative even though the work may be recurrent instead of constant." 4 Va. App. at 259, 356 S.E.2d at 448. This test "avoids adverse effects from unusual, temporary conditions." Id.

> If applicability of the Act was influenced by transient factors, an employer's status could fluctuate between being subject to the Act and exempt from the Act. Such instability would be unsettling for both employers and employees. If an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if one or more of the employees

- 7 -

> works less than full-time, or if the number of his employees temporarily falls below three.

Id. at 259, 356 S.E.2d at 448-49.

Simply put, the evidence proved the number of employees working for R & T Construction dropped to two precisely due to "transient factors." R & T Construction did not terminate Mariner's employment, he quit. Using his own funds, Delisle paid Parks and other laborers to work at his residence, and, as sole owner of R & T Construction, he determined not to hire a third employee at R & T Construction, even though R & T Construction was paying both of its employees to work at Delisle's personal residence. When the work at Delisle's personal residence had been substantially completed and R & T Construction moved to the Del Rossi project, R & T Construction then hired Parks as an employee of R & T Construction. This is precisely the type of temporary, transient circumstance Cotman contemplates.

In view of the evidence establishing that R & T Construction employed three or more persons in 1998, 1999, and 2000, and further establishing Delisle's construction of his personal residence for a period including the first four months in 2001, the commission could not reasonably find that the period of seven to eight months in which R & T Construction had two employees was reflective of the established mode in which Delisle operated R & T Construction. We hold, therefore, that the evidence does not support a conclusion that R & T Construction has regularly in service less than three employees to carry out the established mode of performing its work. Accordingly, we reverse the decision and remand to the commission for entry of an award consistent with this opinion.

<u>Reversed and remanded</u>.

Humphreys, J., dissenting.

It is well established that, when an employer defends a claim on the ground that it is not subject to the provisions of the Virginia Workers' Compensation statute, the employer has the burden of proving, by a preponderance of the evidence, that it regularly employs less than three employees in Virginia. Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 2, 427 S.E.2d 428, 429 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994) (*per curiam*); see also Mark Five Constr. Co. v. Gonzalez, 42 Va. App. 59, 62, 590 S.E.2d 81, 83 (2003). It is equally settled that, "if an employer regularly employs three or more persons to carry out the established mode of performing the work of the business, he should remain subject to the provisions of the Act even if . . . the number of his employees *temporarily* falls below three." Cotman v. Green, 4 Va. App. 256, 259, 356 S.E.2d 447, 449 (1987) (emphasis added). Here, the majority concludes that the evidence before the commission was insufficient to prove that Delisle regularly employed less than three employees, holding instead that "the commission could not reasonably find that the period of seven to eight months in which R & T Construction had two employees was reflective of the established mode in which Delisle operated R & T Construction." Because I believe that this finding ignores our appellate standard of review, I disagree.

The determination of whether an employer has met its burden of proving that it regularly employed less than three employees "is made by the Commission after exercising its role as finder of fact." Bass v. City of Richmond Police Dept., 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). And, on appeal, we are bound by the commission's findings of fact as long as "there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved." Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988) (emphasis in original).

- 9 -

Also, "[w]e do not judge the credibility of witnesses or weigh the evidence on appeal." Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985). Rather, "'[i]t is our duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding.'" Id. (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983)) (omission in original). Moreover, if there is credible evidence in the record supporting the commission's factual findings, we are bound by those findings regardless of whether there is evidence that may support a contrary finding. Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986); Russell Loungewear v. Gray, 2 Va. App. 90, 95, 341 S.E.2d 824, 826 (1986).

Here, the commission found:

> The evidence predominates in establishing that Mr. Delisle did not employ three or more employees in the same business for three months before the claimant's accident and for four months following the claimant's accident. Furthermore, the record does not reflect that Mr. Delisle's established mode of performing the work of his business necessarily required him to employee [sic] three or more employees. To the contrary, Mr. Delisle explained that he chose not to replace a third employee who left his employ in 2000 *because he did not need the additional worker to perform his business*. The Deputy Commissioner concluded that Mr. Delisle's testimony was credible and we defer to him in this regard.

(Emphasis added). The commission concluded that "Mr. Delisle sustained his burden of proving that he did not regularly employ three or more employees in the Commonwealth at the time of the claimant's accident and injury . . . ." Because I believe that credible evidence in the record supports this finding, I would affirm.

Specifically, the record indicates that Delisle's business only had two employees during the continuous eight-month period from December 2000 until August 2001. And, more importantly, Delisle "chose not to replace" the employee who left in December of 2000 "because he did not need the additional worker to operate his business." Accordingly, this is not a case

- 10 -

where the employer periodically fluctuated "between being subject to the Act and being exempt from it." Osborne v. Forner, 36 Va. App. 91, 96, 548 S.E.2d 270, 273 (2001). That is, Delisle did not have three employees one week, two employees the next week, three employees the week after that, and so on and so forth. Nor is this a case, as the majority apparently believes, where the evidence indicates that the established mode of Delisle's business required three employees, and the number of employees only temporarily fell below three. Delisle did not testify that, after his third employee left in December 2000, he intended to eventually rehire a third employee. Rather, Delisle testified that he did not rehire a third employee because he did not need a third employee. This suggests a permanent – rather than temporary – change in the number of employees. The fact that this change did not persist beyond an eight-month period is of little significance because the intended permanency of the change should be measured as of the date of Perry's accident, and not four months later.

The commission clearly relied on Delisle's testimony, which it found to be credible, to conclude that, at the time of Perry's accident in April 2001, the employer's "established mode of business" did not require three or more employees. In my view, then, the record does contain credible evidence supporting the commission's finding that, at the time of the accident, Delisle did not "regularly employ three or more employees." Thus, because I would affirm the commission's dismissal of Perry's claim, I respectfully dissent.